### INJUNCTION AGAINST REFUSAL TO WORK WITH PETITIONERS.

Common Pleas Court of Cuyahoga County.

JOHN A. GRAVES ET AL V. FRANK J. MCNULTY ET AL.

Decided, February 24, 1912.

*Labor Unions—Differences Between Labor Factions—Efforts to Prevent a Warring Element from Securing or Holding Employment May Be Enjoined.*

Where a labor organization splits into two hostile factions, injunction will lie upon petition of one of the factions to restrain the other from threatening to strike or quit in a body employment where the plaintiffs are employed or are promised employment.

BABCOCK, J.

This action is in effect one for an injunction restraining the defendants, who constitute allied labor union organizations, from interfering with the plaintiffs and the electrical workers and members of Local Union No. 38.

The controversy is a factional difference between organized labor organizations involving the question of the legality of the Reed and McNulty factions in the ranks of organized labor.

Plaintiffs allege that the defendants, representing many trades, refuse to work upon jobs where the plaintiffs are employed, and thereby cause their discharge when employed and keep them out of employment when soliciting work.

Heretofore a temporary order was entered restraining the defendants from interfering or attempting to interfere with the employment of plaintiffs by representing to any or all persons with whom plaintiffs are employed, or persons who might employ plaintiffs, that such persons and employers or prospective employers are likely to suffer loss, trouble or damage for employing plaintiffs and the other members of said local union, or from in any way interfering with the employment of plaintiffs; and that they be restrained and enjoined from any and all acts or any methods which, by putting or attempting to put any person or corporation in fear of loss, damage, trouble or injury, will tend to hinder, impede or obstruct these plaintiffs from securing employment or continuing in employment.

Notwithstanding the long and somewhat involved language of the order, the bone of contention between the parties is as to the right to restrain the defendants from refusing to work with plaintiffs. The defendants only ask for a modification of the order, so as to make it plain that if they are not willing to work with plaintiffs, they may notify the employers for whom they work that if plaintiffs are permitted to work upon the job they will quit the employment.

Plaintiffs oppose this modification, on the ground that this will so modify the order as to make it worthless to them.

The only question, then, to be considered is the right to restrain the defendants from threatening to strike or quit in a body, employment where plaintiffs are either at work or are promised employment.

This question generally arises between employer and employe, and is a vexed question, and one in which every variety of opinion is expressed and judicial holdings by courts of eminent authority have been handed down. In this case the question arises

between two labor organizations, and not between employers and employes. The legal question, however, is the same.

I shall not consider it at great length, nor cite many authorities, as every phase of the question and development of the doctrine find support in the adjudicated cases.

I think it may be said that among courts that uphold the right of injunction in labor disputes, the great weight of authority is in favor at the present time of the proposition that workmen may quit in a body and refuse to work, from motives which are satisfactorily to them, whether reasonable in the eyes of other people or not.

In *Jersey City Printing Company* v. *Cassidy et al,* 63 N. J. Equity, 759, the syllabus reads as follows:

"1. The right of workmen to combine and to cease their employment in a body is as absolute as the right of an employer to discharge any number of men in his employment.

"2. Union workmen have the right to strike on an employer's refusing to discharge non-union men in his employ.

"3. Employers, where third parties interfere with an employe against the latter's consent and endeavor by threats or persuasion to have the employes under contract to render service break their contract and quit the service, have a right to an injunction to restrain such third persons from so interfering with their employes.

"4. Employers, where third persons interfere with persons willing to be employed, against the latter's consent, by personal molestation, with intent to coerce such persons to refrain from entering such employment, and by personal annoyance, have a right to an injunction to restrain such third persons from so interfering with the persons seeking employment, such interference being an invasion of the right of employers to have labor flow freely to them."

I quote this syllabus because it is a fair statement of the great body of the law as announced by courts that favor what has been called government by injunction. It announces the right of workmen to cease their employment in a body, if they see fit, and from motives of their own which may not be questioned. It denies the right, by threat or persuasion, to cause employes under contract to break their contracts and quit the service. It also denies the right, by molestation and annoyance, to coerce

others from entering the employment or seeking employment, as well as an invasion of the right of the employers to have labor flow freely to them.

In *Longshore Printing Company* v. *Howell,* 26 Oregon, 527, the syllabus reads:

"Strikes among workmen are not necessarily unlawful, though they may become both illegal and criminal by the means employed to enforce their objects. Employes may lawfully quit their service, either singly or in a body; but if unlawful means are used to uphold or maintain the strike, or if the end to be attained is unlawful, then the strike itself is unlawful. Under a statute making it a misdemeanor for any one, by force, threats or intimidation, to prevent or endeavor to prevent any employe from continuing his work, the act of the executive committee of the labor union in entering the premises of a person and ordering all members of the union then and there at work to cease from their work under penalty of being dealt with according to the laws and regulations of the union, is not unlawful in the absence of intimidation, threats or violence."

This case is authority for the proposition that calling out members of a union from work, or men quitting in a body or threatening to quit in a body, is neither the use of force, threats nor intimidation when done peacefully and in an orderly manner. I think it plain, without resorting to the extreme cases which deny the right of injunction in ordinary trade disputes, that this injunction should be so modified as that the defendants, if they do not see fit to work on the same jobs with the plaintiffs, may exercise their free choice of ceasing employment, in the absence of a concession of their demands. If it be said the motive is an evil one, the answer is, that it is an attempt to force the consolidation of labor interests by strengthening organization. This can not be an evil, unless labor unions are unlawful combinations. That such organizations are not unlawful was first decided in 1832, eighty years ago, and it has been followed by a quite uniform line of decisions to the present date.

I think the injunction should be modified as the defendants ask, and the same is accordingly entered.